UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
PAUL DIBIASE,

                Petitioner,

            -against-

UNITED STATES OF AMERICA.

                Respondent.
-------------------------------------------------------------x

**OPINION & ORDER**

16 CV 4722 (ER)
12 CR 0834 (ER)

RAMOS, D.J.:

      Petitioner Paul DiBiase ("DiBiase") moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, alleging that the ineffective assistance of counsel he received resulted in an illegal sentence. Doc. 6. DiBiase's sentence of 324 months included an enhancement under the Armed Career Criminal Act ("ACCA") that subjected him to a minimum of 15 years in prison, a provision later invalidated by the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2552 (2015).

      DiBiase asserts that his sentence is unlawful because he never qualified for an ACCA enhancement. DiBiase is presumptively blocked from making this claim, however, by a provision in his plea agreement waiving collateral attacks. DiBiase argues that this waiver does not apply for two reasons. First, DiBiase argues that because his sentence was illegal, the waiver does not apply. Second, DiBiase contends that his counsel, Jeffrey Chartier, rendered ineffective assistance of counsel at the plea and sentencing, and that he is therefore permitted to challenge the validity of his sentence notwithstanding the collateral attack waiver.

      Because DiBiase's arguments do not rebut the presumptive enforcement of the collateral attack waiver, his motion to vacate, set aside or correct his sentence or alternatively to hold an evidentiary hearing is DENIED.

I.    FACTUAL BACKGROUND

   A.  The Initial Offense

DiBiase participated in a home invasion scheme alongside two others, including his brother, Daniel DiBiase.  Doc. 4-1 at 1.  For more than a year, they planned and conducted robberies and burglaries of upscale homes in Westchester County, New York and Fairfield County, Connecticut.  12-CR-0834 Doc. 176 at 4 (Gov't Opp.).  From August 2011 until their capture on October 17, 2012, their enterprise committed approximately 28 home invasions, including five confirmed gun-point robberies, and roughly two dozen other burglaries.  *Id*. at 5.  The enterprise transported the stolen goods to Duchess County, New York, and laundered the criminal proceeds through a fence in Manhattan.  *Id*. at 4.

   B.  The Charges and Plea

On November 15, 2012, DiBiase was charged in a four-count indictment with two counts of interstate travel with intent to commit a crime of violence to further criminal activity, one count of use of a firearm in furtherance of such a crime, and one count of possessing a firearm after having been convicted of a felony.  Doc. 27 at 15.  On February 24, 2014 a two-count superseding Information was filed, alleging one count of conspiracy to conduct a racketeering enterprise pursuant to 18 U.S.C. § 1962(d) and one count of being a felon in possession of a firearm after having been previously convicted of three violent felonies pursuant to 18 U.S.C. §§ 922(g) and 924(e).[1]  *Id*. at 15.

DiBiase entered into a plea agreement with the Government dated June 18, 2014, which he signed on June 20, 2014 prior to his guilty plea that same day.  *Id*. at 15.  DiBiase acknowledged that he read the plea agreement and understood it.  *Id*. at 15–16.  In the plea agreement, DiBiase stipulated that the applicable Sentencing Guidelines range was 292 to 365 months' imprisonment because, among other things:  (1) firearms were brandished during multiple robberies, implicating U.S.S.G. § 2B3.1(b)(2)(C); (2) victims sustained bodily injuries,

---

[1] DiBiase's memorandum also includes a reference to 18 U.S.C. § 924(c)(2)(A)(ii), which is a section that does not exist.  Doc. 27 at 15; *United States v. DiBiase*, 649 F. App'x 77, 79 (2d Cir. 2016) (noting this reference was a "typographical error" because it is "a section that does not exist.").

implicating U.S.S.G. § 2B3.1(b)(3)(A); (3) victims were physically restrained to facilitate robberies, see U.S.S.G. § 2B3.1(a)(4); (4) the cumulative loss exceeded $1.5 million, implicating U.S.S.G. § 2B3.1(b)(7)(G); and (5) the defendant was an organizer and leader of the criminal activity, implicating U.S.S.G. § 3B1.1(a).

The plea agreement included a waiver provision pursuant to which DiBiase agreed that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under title 28, United States Code, Section 2255 . . .; nor seek a sentence modification . . . of any sentence within or below the Stipulated Guidelines Range of 292 to 365 months' imprisonment." Doc. 27 at 16.

The plea agreement listed three prior convictions: (1) a 1985 Texas conviction for burglary of a habitation; (2) a 1992 Connecticut conviction for burglary and robbery; and (3) a 1993 New Jersey conviction for burglary. Doc. 27 at 16. Each of these felonies were referred to as "violent felonies" in the plea agreement, without any definition of the legal meaning of the term "violent felony." *Id*. at 6. At the July 20, 2014 plea hearing, the Court asked DiBiase, "Do you admit those felony convictions?" to which DiBiase replied, "Yes." *Id*. at 17.

At the Government's request, the Court also asked DiBiase "do you confirm that [the three felonies] were burglaries or otherwise violent felonies?" to which DiBiase replied, "Yes, sir." *Id*. There was no discussion of the meaning of the ACCA term "violent felonies" or discussion of the details of DiBiase's three prior felonies. *Id*. Lastly, the Court informed DiBiase that a conviction on Count Two (felon-in-possession) carried a fifteen-year mandatory minimum term of imprisonment pursuant to the ACCA enhancement. *See DiBiase*, 649 Fed. App'x at 78 (citing Fed. R. Crim. P. 11(b)(1)(I) ("[T]he district court properly informed DiBiase that a conviction on Count Two carried a fifteen-year mandatory minimum term of imprisonment.").

### C. DiBiase's Objection to the Pre-Sentencing Report

On November 11, 2014, DiBiase filed a *pro se* objection to his Pre-Sentence Investigation Report ("PSR") despite having not yet received a draft of the PSR.[2]  Doc. 27 at 18.  DiBiase objected because, after his guilty plea, he had learned that his Texas burglary conviction did not qualify as a "violent felony" under the ACCA and therefore that it did not qualify as a predicate conviction for an ACCA sentence enhancement.  *Id*.

DiBiase's objection was discussed before the Court at a January 16, 2015 status conference.  Chartier requested time from the Court "to look further into that matter, and see if I will be adopting that or not.  I do want to look into the Texas situation that is addressed in there.  I have not had an opportunity to do so."  *Id*.; 12-CR-0834 Doc. 81 at 2, 10 ("Jan. 16, 2015 Transcript").

The Government stated that "[t]o the extent that any of the arguments that [Mr. DiBiase or his counsel] may elect to press . . . in connection with sentencing are inconsistent with the facts or the calculations to which we stipulated in his plea agreement, the government will, of course, view that as a breach of the plea agreement and that may have adverse consequences for the defendant."  *Id*. at 19.  The Court restated the Government's position to DiBiase and asked DiBiase if he understood.  *Id*.  The Court explained to DiBiase that if he wished to press the argument, the Government might take the position that he breached the plea agreement.  DiBiase's counsel responded that he discussed "what was just mentioned" with DiBiase and that DiBiase wanted to withdraw the motion.  *Id*.  DiBiase then stated on the record, "I withdraw it."  *Id*.

---

[2] At DiBiase's February 27, 2015 sentencing, the Court became aware that DiBiase had not been provided with a copy of his PSR until that day.  Doc. 27 at 20.  The Court stated that "it is shocking" that "this defendant in this case facing so much time has never seen the presentence report until now."  *Id*.  Despite Chartier assuring the Court that he had reviewed the PSR with DiBiase even if he had not provided DiBiase with his own copy, the Court afforded DiBiase an opportunity to review the PSR with counsel during a recess.  *Id*.; 12-CR-0834 Doc. 74 at 4–5

4

### D. Sentencing

At sentencing held on February 27, 2015, the Court adopted the Sentencing Guidelines as set forth in the PSR, finding DiBiase's combined total offense level to be 36. Doc. 27 at 20–21. Although DiBiase's criminal history category was V, it was enhanced to VI pursuant to the ACCA. *Id*. The combination of this offense level and criminal history yielded a Guidelines range of 324 to 405 months, which was higher than the guideline range of 292–365 the parties had stipulated to. *Id*. at 18. DiBiase was sentenced to a total of 324 months, 144 months on Count One and 180 on Count Two. *Id*. at 20. The Court entered Judgment on March 6, 2015 sentencing DiBiase to concurrent terms of imprisonment of 240 months on Count One and 324 months on Count Two. *Id*. On March 16, 2015, the Court filed an Amended Judgment correcting a clerical mistake. No. 12-CR-0834, Doc. 70.

### E. Direct and Collateral Appeals

On June 26, 2015, four months after DiBiase was sentenced, the United States Supreme Court in *Johnson v. United States* held that the provision of ACCA permitting sentence enhancements based on three prior convictions for "violent felonies" violated due process because it is unconstitutionally vague. 135 S. Ct. 2551, 2563 (2015). Anticipating a flood of 28 U.S.C. §§ 2255 and 2241 petitions before the one-year anniversary of *Johnson*, Chief Judge Colleen McMahon issued a standing order permitting initial applications on or before June 27, 2016 to be supplemented by more fully argued briefs filed on a future date. Doc. 2.

DiBiase appealed the Amended Judgment, which the Second Circuit affirmed. *United States v. DiBiase*, 649 Fed. App'x 77 (2d Cir. 2016). The Second Circuit noted that "[t]o the extent that DiBiase argues that he received ineffective assistance of counsel in entering into the plea agreement (or otherwise), we decline to address these issues on direct appeal. DiBiase may raise these claims in a collateral proceeding." *Id*. at 79.

DiBiase, acting *pro se*, filed the instant motion on June 17, 2016. Doc. 1. He then filed a request for counsel on July 14, 2016. Doc. 3. DiBiase amended his motion on November 3,

2016.  Doc. 6.  The Court granted his request for *pro bono* counsel on February 6, 2017.[3]  Doc. 8.  DiBiase's counsel filed a supplemental memorandum of law in support of his motion.  Doc. 173.  The Government opposed on November 13, 2018 and DiBiase's counsel replied on December 3, 2018.  Gov't Opp.; Doc. 29.

## II.     LEGAL STANDARD

Section 2255 enables a prisoner who was sentenced by a federal court to petition the sentencing court to vacate, set aside, or correct the sentence.  28 U.S.C. § 2255(a).  Such a motion must allege that (1) the sentence violated the Constitution or the laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence "is otherwise subject to collateral attack."  *Id.*  A "collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

An evidentiary hearing shall be granted with respect to a § 2255 petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  To avoid summary dismissal without the benefit of a hearing, a petitioner is required to establish only that his claim is plausible.  *See Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009).  However, if the record contradicts the petitioner's factual assertions, the court is not required to assume that the claims are credible.  *Id.* at 214.  After it has reviewed both the petitioner's submissions and the underlying record, the court determines whether the petitioner may be able to establish a *prima facie* case at a hearing and, if material facts are in dispute, a hearing should usually be held.  *Id.* at 213.

---

[3] DiBiase's habeas attorney requested to be relieved and that new counsel be appointed on May 8, 2020.  Doc. 33.  New counsel was appointed on May 12, 2020.  12-CR-0834 Doc. 208.

### III. DISCUSSION

DiBiase is presumptively blocked from collaterally attacking his sentence because his plea agreement includes a provision waiving his right to appeal or collaterally attack his sentence. Indeed, "'[w]aivers of the right to appeal a sentence are presumptively enforceable.'" *United States v. Riggi*, 649 F.3d 143, 147 (2d. Cir. 2011) (quoting *United States v. Arevaleo (Vigil)*, 628 F.3d 93, 98 (2d Cir. 2010)). Accordingly, before the Court reaches the merits of DiBiase's request, the Court must consider whether DiBiase's right to collaterally attack his sentence was validly waived.

However, a defendant may show that a waiver of his appellate rights is unenforceable

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amount[ing] to an abdication of judicial responsibility subject to mandamus.

*Sanford v. United States*, 841 F.3d 578 (2d Cir. 2016).

On their face, DiBiase's requests are blocked by a waiver of his right to appeal or collaterally attack and he fails to demonstrate that his waiver is void. Though he argues that the waiver is void because of a change in law, because his sentence was illegal, and because it was agreed to under ineffective assistance of counsel, these arguments are not persuasive. First, Circuit precedent squarely holds that *Johnson* did not void collateral attack waivers on sentences enhanced by the ACCA. Second, DiBiase's argument about the illegality of his sentence does not qualify for a collateral attack under one of the four *Sanford* categories. Third, DiBiase does not rebut the strong presumption of effective counsel because it is not clear that his attorney forwent any fruitful avenues of argument.

#### A. DiBiase's Waiver is Not Voided by a Change in the Law

DiBiase argues that because his sentence was unlawful, waiver cannot bar collateral attack. DiBiase's argument relies on *United States v. Torres*, 828 F.3d 1125 (9th Cir. 2016),

7

which holds that "waiver of appellate rights will also not apply if a defendant's sentence is 'illegal,' which includes a sentence that 'violates the Constitution . . ..'" Doc. 27 at 44.

This argument fails. DiBiase is correct that the Constitution imposes limitations on plea agreements. *See United States v. Rosa*, 123 F.3d 94, 101 (2d Cir. 1997) (noting that courts will "certainly often be willing to set aside the waiver and accept appeal when constitutional concerns are implicated . . ."). However, the Second Circuit has squarely addressed plea agreements waiving appeal of pre-*Johnson* ACCA enhanced sentences, holding them to be presumptively valid. *United States v. Blackwell*, 651 Fed. Appx. 8, 9–10 (2d Cir. 2016) (concluding that defendant's argument that his Guidelines range was improperly calculated in light of *Johnson* was barred by the waiver provision of the plea agreement). "Because [petitioner's] sentence conformed to his plea agreement, he received the benefit of that agreement and he has waived any challenge to his sentence on the basis of *Johnson*. *Id*. (citing *United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005)).

### B. DiBiase's Waiver is Not Voided due to an Illegal Sentence

DiBiase argues that his waiver is void because the Court did not analyze whether his past felonies qualified as predicate felonies for an ACCA enhancement. DiBiase cites no authority indicating that such an argument qualifies for a collateral attack under one of the four *Sanford* categories. 841 F.3d 578. Instead, DiBiase cites three out of District opinions indicating that pleas to ACCA enhancements under the modified approach may only be accepted with analysis of whether the underlying felonies satisfy the ACCA. Doc. 27 at 51. Given the clear categories of *Sanford*, and DiBiase's failure to frame his argument within one of these categories, this argument fails.

### C. DiBiase's Claim of Ineffective Assistance of Counsel Does Not Entitle Him to an Evidentiary Hearing

DiBiase argues that his collateral attack is not waived because he agreed to the waiver while suffering ineffective assistance of counsel. To qualify for an evidentiary hearing on an ineffective assistance of counsel claim, the petitioner needs to establish a plausible claim, not that

8

he will succeed on that claim. *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (citing *Puglisi v. United States,* 586 F.3d 209, 213 (2d Cir.2009)). Moreover, "[t]he procedure for determining whether a hearing is necessary is in part analogous to . . . a summary judgment proceeding . . . . If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." *Id.*

> 1. *The Collateral Review Waiver Does Not Preclude DiBiase's Claim That His Counsel Was Ineffective During Plea Negotiations*

Appeal waivers contained in plea agreements are presumptively enforceable as long as they are entered into knowingly and voluntarily. *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam) ("In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.").

However, "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002); *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam) ("Even if the plain language of the plea agreement barred this appeal, we would not enforce such a waiver of appellate rights in this case because the defendant is challenging the constitutionality of the process by which he waived those rights.").

Here, DiBiase claims that his attorney failed to investigate the statutory predicates supporting his ACCA enhancement and that, as a result, his sentence was erroneously enhanced. *See* Doc. 27 at 15, 63, 67; Doc. 29 at 7. Counsel's purported failure to investigate whether DiBiase's prior convictions qualified him for an ACCA sentence enhancement allegedly rendered the plea-bargaining process itself—along with counsel's recommendation that Petitioner sign the plea agreement—constitutionally infirm. Because this claim goes to the validity of the process by which the waiver was obtained, that claim is not precluded by the collateral appeal waiver. *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002).

2. *The Record Shows That Counsel Acted Reasonably in Not Challenging the Sentencing Enhancements*

DiBiase argues that he received ineffective assistance of counsel because his attorney failed to investigate whether DiBiase's prior conviction qualified as a predicate felony under the ACCA. This argument fails. To show ineffective assistance of counsel, the representation from counsel must fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. This standard requires more than mere deviation from best practices or common practices; it must amount to incompetence under prevailing professional norms. *Harrington v. United States*, 689 F.3d 124, 129–30 (2d Cir. 2013). Moreover, there is a strong presumption that counsel's conduct is professionally reasonable. *United States v. Venturella*, 391 F.3d 120, 135 (2d Cir. 2004) (internal quotation marks omitted).

For example, failure to investigate a legal issue can constitute constitutionally ineffective counsel if such an issue is significant and obvious. *Weingarten v. United States*, 2017 U.S. App. LEXIS 13586, at *8 (2d Cir. July 27, 2017) ("[F]ailure to raise an argument may, in some instances, constitute deficient performance . . . . [such as] omit[ing] significant and obvious issues while pursuing issues that were clearly and significantly weaker."); *see also Saxon v. United States*, 16-cv-2735, 2017 U.S. App. LEXIS 10564, at *619 (2d Cir. June 13, 2017) (citations omitted) (quotations omitted) ("omissions [that] cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness are errors indicative of deficient performance . . . . [e.g.] failing to research the relevant law."). However, counsel is not ineffective when an attorney "fails to forecast changes or advances in the law." *United States v. Kimber*, 777 F.3d 553, 563 (2d Cir. 2015).

DiBiase contends that his counsel failed "to ascertain the law and provide accurate information on the law to Mr. DiBiase in order to enable him to make an informed and intelligent decision on whether and how best to plead guilty." Doc. 27 at 50. This argument fails to rebut the strong presumption that counsel was effective. It is true that after DiBiase filed his *pro se* motion challenging the PSR in his criminal case, his counsel at the time made statements in

10

Court that plausibly indicate counsel did not investigate DiBiase's prior convictions before negotiating a plea with the Government. Doc. 27 at 5–6. There was, however, nothing to investigate. DiBiase does not argue that his predicate felonies failed to satisfy ACCA requirements at the time of his plea. Doc. 27 at 53–55. Nor can he. Circuit precedent at the time held that "burglary itself is a crime that inherently involves a risk of personal injury." *United States v. Lynch*, 518 F.3d 164, 169 (2d Cir. 2008) (citing *United States v. Andrello*, 9 F.3d 247, 249–50 (2d Cir. 1993).

While DiBiase contends that, notwithstanding *Lynch*, a close analysis of predicate felonies is required to establish that applicability of an ACCA enhancement, this argument misunderstands the posture of his motion. Doc. 29 at 5–6 (arguing that crime-by-crime analysis is required by *Taylor v. United States*, 495 U.S. 575, 601 (1990) and related cases). DiBiase must rebut the strong presumption that his counsel was effective. This does not mean DiBiase must show that a *Taylor* analysis by his counsel may have found DiBiase's predicate felonies failed to qualify for an ACCA enhancement. Rather, DiBiase must show that there was such an obvious case for such a finding that his counsel was obliged to conduct the analysis. *Strickland*, 466 U.S. at 690-91 ("In an ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). DiBiase does not even conduct such an analysis in his instant brief, so it is not established that this was an obvious, non-frivolous argument to make. *See Weingarten*, 2017 U.S. App. LEXIS 13586, at *8 ("[F]ailure to raise an argument may, in some instances, constitute deficient performance . . . . [such as] omit[ing] significant and obvious issues while pursuing issues that were clearly and significantly weaker.").

Given the Second Circuit's then-position that "burglary itself is a crime that inherently involves a risk of personal injury," *Lynch*, 518 F.3d at 169 (citation omitted), and no indication that a *Taylor* analysis would bear fruit, it is no failing by DiBiase's counsel to forgo performance of a fruitless investigation. *See Strickland* 466 U.S. at 691 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations

11

unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

In other words, DiBiase does not present a plausible claim that he received ineffective assistant of counsel.

## IV.  CONCLUSION

For the reasons set forth above, the Court denies DiBiase's motion to vacate, set aside, or correct his sentence pending an evidentiary hearing.

It is SO ORDERED.

Dated:  May 29, 2020
         New York, New York

EDGARDO RAMOS, U.S.D.J.